Thank you, Your Honors, and good morning. May I offer a three-point summary to start. The statute. The statute in this case turns on the meaning of Section 1675d.3, Revocation, which applied to all future SSI imports. Fact. SSI CCR. It involved no earlier determination. No earlier determination was reconsidered. This is not a question of inherent authority. This is not TKS. In case law, this was a CCR too far. Unlike any upheld by the courts before, this chain circumstance review was conducted on imports not subject to an anti-dumping order. The meaning of revocation. In the beginning, the anti-dumping order as to SSI was revoked under 1675d. By explicit statutory language of d.3, revocation mandatorily applied with respect to unliquidated entries of the subject merchandise on or after a date determined by the administrating authority. In other words, revocation applied to all of SSI's future entries. This is confirmed in the Commerce Department's regulations where revocation is said to be a term of art which refers to the end of an anti-dumping proceeding. Is your concern as to the scope of the revocation order or that there was no injury determination? That there was no injury determination, Your Honor. That the order was reimposed after revocation without an injury determination. For which the Commerce Department had no authority to do because we believe the revocation statute is clear in its meaning that once an order is revoked, it applies to all future entries. So that is the question on appeal, is it not? Whether or not revocation, at least under the position is. Yes, Your Honor, that is the central question. Our position is, of course, that the order could not be reimposed without an injury determination. Now, a petition could be filed. SSI could be brought back within the anti-dumping order. It's not like SSI escapes in perpetuity. If a petition were refiled, dumping were found, injury was found. But you agreed to the reimposition when, during, as a condition of the revocation, right? We agreed to a legal, we signed the certification and if that had been done in a legal manner, yes, we had agreed to that. It turns on the question of, if you think or if you find that without the certification, the anti-dumping order could not be reimposed, does the certification change that conclusion? Does the certification make a difference? We believe it doesn't because an agency cannot act without congressional authority. A private party cannot create agency authority beyond what Congress confers. And in this instance, an agreement to an illegal act, as it were, to reimpose the anti-dumping order without an injury test is unenforceable. In fact, the U.S. Steel... Mr. Pierce, excuse me. What do you make of the language in 1675, D1, that the administering authority may revoke in whole or in part? Does that create some question as to whether the revocation in part would apply? Well, I think that's correct. This was a revocation in part, but it was a revocation. And once a revocation took place, D3 controls as to the whether the revocation is in whole or in part. There is no distinction. But Commerce's regulation was promulgated, at least they would argue, I think, that it was argued under the authority provided in 1675, D1. That's correct. And they determined that there can be a revocation in part if a company has three zeros in commercial quantities. But once they revoke, D3 takes over. You can't use an ambiguity in the word part to overcome an unambiguous portion of the statute for the meaning of revocation, and that would be D3. As is consistent with the Commerce Department's regulations defining revocation, which is the end of a proceeding. I gather that there was no additional or intervening evidence as to any change in the situation of the domestic industry. Is that correct? That's correct. There was no, and indeed there was no pre-determination whatsoever as to their determination to revoke. That determination was not revisited. They did not revisit, you know, there's new facts, SSI didn't have three zeros, didn't ship in commercial quantities. This was a new proceeding, a new determination to impose an anti-dumping order. It was done without an injury test. It looked at brand new facts. All of the entries that were reviewed to determine dumping all were made after revocation. This isn't like, well, we went back in and said in that third review, you really shouldn't have had a zero because we have new evidence. This wasn't a revisiting. That's why I don't think it comes within the inherent authority line of cases. Why doesn't the injury determination that was made initially carry forward given the fact that the order was not revoked entirely, remained in place, at least with respect to other members of the industry? So the question I have is why doesn't that injury determination remain in place to satisfy the obligation? Well, for two reasons, Your Honor. One is that the revocation was as to the order as it applied to SSI. The order is composed of an injury determination and a dumping determination. As they applied to SSI, the revocation was as to an order. It wasn't as to the SSI as the order was revoked. And then we see in the subsequent Sunset Review, both the Commerce Department and the ITC treat and acknowledge that SSI is outside of the order, is revoked from the order. Commerce does not refer a Sunset Margin to the ITC and it's part of the Sunset Review for SSI. And the ITC explicitly says in its So you have not only a revocation both to the dumping finding and the injury finding, but you have both agencies recognizing that revocation as to SSI in terms of the injury finding. And we see that in the Sunset Review. So you're not saying that there's a presumption of no injury. You're saying that the prior determination can't be additional evidence? I'm not saying the injury was eliminated. There's no determination about the injury per se. Other than that, the order was revoked as it applied both to the dumping finding and to the injury determination. The injury determination and the order stays in effect for all other companies subject to it, but it was revoked as to SSI and revoked both as to dumping and as to injury because it was revocation of the order. And as I said, the definition of revocation applies to all revocations in whole and in part. And as Commerce argued in Trustees' Rubber Thread, with revocation, a CCR is impossible because there are no unliquidated entries to applicable order. And as this Court held in Trustees' Rubber Thread, quote, while Commerce has a duty to conduct CCRs of existing anti-dumping orders, Congress has not charged Commerce with reviewing revoked anti-dumping orders. So the analysis, from my perspective, starts with a revoked order of which Commerce has no authority to conduct a changed circumstance review. As I said, an anti-dumping order could still later be imposed against SSI, but it would be revocation of dumping and injury, as happened in the case of Butwell Pipe Fittings from Thailand, where there was an excluded company, and in the case of Dreyfus, where there was an excluded company, Commerce said a new petition has to be filed. SSI CCR. As I said, in the changed circumstance review, no earlier determination was reconsidered. There was no new evidence affecting any earlier determination. This is not an inherent authority case. There's no question of fraud in an earlier proceeding. Commerce only reviewed SSRs post-revocation entries. And then at the end, frankly, by changing the date of sale methodology, dumping was found, and SSI was subject to the AD order anew, but this time without an injury test. But they essentially relied on the old evidence. And why? That's what concerns me. Why can't they do that? In fact, Your Honor, they did not rely on the old evidence. The old evidence was, in order to revoke, there were three years of sales reviewed, and SSI was shown to not dump any of those sales. Order was revoked. Changed circumstance review starts after revocation, and they look at an entirely new set of sales that all came after the revocation. The sales were made after the revocation. New set of facts, not the old set of facts, not revisiting that question. And in analyzing the evidence of the domestic industry, there was no injury redetermination in the changed circumstance review. That was my question. Why couldn't they rely on the old determination? Because the order as to SSI had been revoked, and the order encompasses both dumping and injury. It wasn't a revocation of just the dumping finding. But wasn't the revocation premised on the absence of dumping, not the absence of injury? Yes, it was. And the revocation in that instance is complete, just as any revocation applies completely and as defined by 1675 D.A. 3. But doesn't that mean the injury determination remains in place? At least, certainly it remains in place with respect to the other companies. It remains in place with respect to the other companies. It remains in place with respect to SSI's parallel countervailing duty order, which they are also still subject to. But it didn't with respect to the dumping duties applicable to SSI because the order was revoked. When you revoke an order, you reset the clock. And in order for anti-dumping duties to be imposed, in that instance, it's our position, a new petition has to be filed. The agency cannot come along and, through a changed circumstance review, impose an anti-dumping order without an injury test. Let's hear from the other side and we'll add to your rebuttal time. Thank you, Mr. Pierce. Good morning, Your Honor. May it please the Court. The judgment below should be affirmed because SSI is trying to have it both ways here. SSI voluntarily invoked Congress's revocation regulation. It contended that it had three de minimis reviews in a row. In fact, to correct Mr. Pierce, there wasn't actually a second review. The second administrative review was rescinded, so there was a certification in the third administrative review in its request for review. Did the administrative review include the domestic industry? Yes, the domestic industry rescinded its request for the second administrative review. So in the third administrative review regarding the 2003-2004 period of review, SSI voluntarily asked for revocation under Congress's regulation. And at Joint Appendix page 80, it signed a certification pursuant to that regulation in which it certified that it had not dumped during the three periods and that it would be subject to immediate reinstatement should the Department of Commerce determine that it had resumed dumping. It did not challenge the regulation. It didn't say that the regulation was invalid. This is strictly in accordance with the regulation. Well, that's the standard boilerplate, isn't it, by which the revocation takes place? Well, in this case, Commerce actually relied on SSI's certification because it had only actually conducted two reviews to find that there was de minimis dumping. And then in the second review, the review was rescinded. So basically, Commerce took SSI's word for it that it wasn't dumping during the second review, and it revoked. And this regulation is a standard gap-filling procedure because the statute, 1675d, does not define the standards or terms by which the Secretary of Commerce may exercise his or her discretionary authority to revoke an order in whole or in part. The other thing I'd like to correct is that there's also in 1675c of the statute a very specific sunset provision by which Congress has delegated to the Department of Commerce and to the International Trade Commission Authority by which they review after a five-year period to see if there's a continuing injury. But that's not really the question, is it? The question is whether circumstances have changed as to the importer. How do we know that circumstances may not have changed in their favor as far as the domestic industry is concerned? Well, there was a changed circumstances review. Commerce... As to the importer. But apparently there was no change. Was there a changed circumstances review as to the domestic industry? No, but no one requested that. Domestic industry, in this case, had amassed evidence that SSI had resumed dumping. And after several questionnaires, Commerce promulgated several questionnaires to test the robustness of the domestic industry's allegations. Is that the government's position that because no one requested it, there's a presumption? Well, there's really no reason to... As I was saying, Your Honor, there was a five-year sunset provision by which the agencies, the charge agencies, the Commission and the Department of Commerce determined to see whether the entire order should remain in place. Commerce, the reason why I was raising the sunset provision, Your Honor, is that Commerce has absolutely no authority. It doesn't purport to make any determination as to whether there's a specific injury being caused by SSI. So the answer to my question is yes, there's a presumption? Well, there's a presumption under the statute. That's under the law. Commerce doesn't... There's a presumption of injury, is my question. Yes. Well, there's a finding by the International Trade Commission that the injury was in place. And Commerce specifically, at Joint Appendix page 105, noted that that injury determination had remained in place, that the order had remained in place, and that certainly that the other companies that remained under the subject to the order. Commerce doesn't purport to make any determination as to injury. The statute requires injury. Yes. So you're saying that injury did not have to be redetermined because it's presumed because it was determined three years earlier? Yes. I would say that Commerce didn't purport to make any determination as to injury. As all Commerce did, consistent with its regulation, consistent with this discretionary authority under 1675d, was to determine that during these three periods of review, dumping had not occurred and it conditionally revoked. And it relied on the certification in its regulation that SSI provided that it would agree to immediate reinstatement should the Secretary determine that dumping had reviewed. Immediate reinstatement is not consistent with the idea that the domestic industry has to start from ground zero and go to the ITC and get another injury determination. Immediate reinstatement means just that. If SSI was the only company involved and after three years there was a determination there was no longer any dumping, would the same certification be required prior to a revocation? Yes. Or would the entire proceeding simply be revoked? That's a good question, Your Honor. There are two provisions in the two regulations that Commerce has promulgated, one for complete revocation of an order in full and then one for in part, which is the one that we have here. Typically the one for in full occurs, for instance, if the domestic industry ceases to exist or there's some sort of global reason as to why the order would no longer be needed. But let's suppose that there was only one party involved, SSI, and let's suppose that the dumping had ceased to exist and the order was revoked and then there was a later determination that dumping had resumed. Would an injury requirement be – would an injury determination have to be made at that point? I think, Your Honor, I think that would be a much harder question, Your Honor, but I think the answer would be no because I still think that there would be a sunset provision. The answer is no? The answer is no, that there would still be a conditional revocation because, again, the Department of Commerce doesn't make any determination as to injury. When it's revoking an order, it's simply making a determination that the dumping activity, the sales of less than fair value have ceased during this – within this period of the five years. I think that's a harder question. So that would be – well, the reason I ask, obviously, is because the next question would have been if you had said, well, no, a new injury determination would have to be made, the question would be what principle distinction is there between the revocation in full and the so-called revocation in part with respect to injury? I don't – But you're saying that you think the injury determination would remain in place and be effective even if there was a revocation in full. I'm sorry to interrupt you, Your Honor. I understand what Mr. Pierce is going to say in response, but I think the Court already addressed this in TKS. In TKS, there was a revocation of this order – of the order, and this Court held – to address SSI's second point, this Court has clearly held that a revocation proceeding is – or reinstatement is permissible under 1675C – excuse me, 75B, excuse me, because that's exactly what happened in TKS. In TKS, this Court said that it was well within Congress's authority to conduct a changed circumstances to determine reinstatement. And in that case, there was – so the fact that there was fraud in that case doesn't really matter for purposes of statutory authority because this Court clearly held – Well, but that case addressed, of course, their general authority to protect – Well – under circumstances of fraud and not necessarily limited to 1675. It's not necessarily limited to 1675, but I will say at 529 F. 3rd. 1360, the Court did say explicitly, as its name suggests, Section 1675B1 is intended to facilitate the review of certain determinations when circumstances have changed sufficiently from the time the determination was originally made such that it may no longer be appropriate. And so the Court was clear. I think that the Court did go into, in TKS, did go into Commerce's inherent authority. And again, we would certainly argue in the alternative that the fact that fraud is present in TKS doesn't really materially distinguish this case. Certainly, even if – using the TKS analysis, even assuming for argument's sake that the Court did not say that Commerce invoked its authority under 1675B in that case and that it was relying on purely inherent authority, that would be the case here because there's nothing in the statute that would forbid Commerce from going back and looking to see whether dumping has been resumed. This is an exercise – Do you disagree that – with the statement that a revocation in full revokes both the injury determination and the dumping determination? I think I would disagree with that because, again, the Court – Congress has provided for sunset provisions, and really the International Trade Commission makes an injury determination, and Commerce makes the sales at less than fair value determination. So there are specific provisions in the statute, and then under 1675D, the Secretary of Commerce has discretionary authority to determine whether to revoke in full or in part, and that's necessarily within the confines of this four-year sunset provision – five-year, excuse me, five-year sunset provision. I see I'm out of time, but if the Court has any other questions. Any more questions, Mr. McCarthy? No. We respectfully ask for the judgment of the Court. Thank you, Mr. McCarthy. Thank you. Mr. Garish. May it please the Court, I'm Jeff Garish of Skadden Arts on behalf of the United States Steel Corporation. I guess I'd like to start first with the question of the injury determination and just to make a few brief points there and move on to Commerce's authority to conduct the change circumstances review. On the injury determination, there was no intervening evidence of change in the domestic industry situation, and there was nothing here in what Commerce did that disturbed the original injury determination. Injury determinations are order-wide in nature. They are not company-specific, and Commerce's determination here was based on the absence of dumping, not the absence of injury. Was the issue raised at all with the request, which I assume was initiated by the industry, to take another look at the pricing? There was no request made to reconsider the condition of the domestic industry, Your Honor, and that is not something that would be within the purview of the Department of Commerce. That would, of course, be within the purview of the International Trade Commission. But it's also within the statute. Correct. That's correct, Your Honor. But there was no redetermination or reconsideration of the injury to the domestic industry. Was there any allegation by the importer or anyone else that the industry's circumstances had changed? No, there was not, Your Honor, not at all. So there was no consideration of that whatsoever, and the original injury determination continued to apply because the order continued in effect. So that original determination was still in effect. The other point that I think Mr. Pierce made was with respect to the revocation itself, that it was permanent in nature, was he relies on Section 1675 D.3 as being controlling and unambiguous. But all Section 1675 D.3 does, it says that a revocation has to be prospective in nature. It doesn't say anything about that revocation can't be conditional or that a company cannot be considered for reinstatement in an order. In fact, it doesn't say anything at all about the length of time for which a revocation must remain in effect. It doesn't say that it's revoked as to all entries permanently. It doesn't say anything of the sort. Well, then some sort of rule of reason or whatever should be imposed on thinking about how long one should wait before there may be at least a reasonable consideration as to whether the domestic industry was the same as it had been three years earlier. Right. Well, in this particular instance, though, Congress was solely focused on had dumping resumed. That's their argument, isn't it? Yes, it is. That's inadequate. Well, they are saying, though, that they never alleged in any way that Congress should reconsider whether there was injury to the domestic industry. They are just saying as soon as the order was revoked with respect to SSI solely, then the injury determination went away. But that's not the way injury determinations work. Injury determinations are order-wide. They're based on imports of the subject merchandise from Thailand in this particular case. It is not company-specific, and that injury determination was never disturbed by Commerce in its revocation determination. Now, in terms of the issue of whether Commerce had the authority to conduct a changed circumstances review, this review fell squarely within the first of the three listed items in Section 1675B1. Now, we agree with Commerce that its authority to conduct a changed circumstances review is not limited to those three items. But the fact of the matter is this review fell squarely within the provisions of the first of those listed items. And what happened in this case was there was a final determination of dumping by SSI and other Thai producers of hot rolled steel that resulted in an anti-dumping duty order. Since that determination and order were issued, there were changed circumstances in the form of SSI being revoked based on a lack of dumping, but it also was conditioned on its agreement not to dump in the future. And there was changed circumstances in the form of SSI reneging on that agreement and resuming dumping immediately after the revocation was issued. Based on those changed circumstances, Commerce determined that SSI was in fact dumping the merchandise just as it had been in the original determination, and that the order should be in effect as to its sales just as it was when the order was originally issued. That fits squarely within the provisions of the statute, and Commerce had authority under the statute on that basis. Is this the review of the revocation rather than the affirmative determination? Well, it's a review of whether there were changed circumstances such that the final determination of dumping that was issued in the order should remain in effect. And that's what this Court in TKS recognizes the purpose of a changed circumstances review, to review those changed circumstances, and that's exactly what Commerce did here and found that the original determination of dumping was appropriate. Well, TKS really was focused on the fraud that had taken place. I mean, I think it's not accurate to read that decision that broadly. Well, I think prior to it, when this Court was looking at what is the purpose of a changed circumstances review, I think it did determine that, in fact, a changed circumstances review is intended to determine whether the circumstances have changed sufficiently such that the original finding of dumping in the order continued to be appropriate. Now, it then moved on, of course, to consider inherent authority, and there the issue of fraud, of course, was a part of its determination, and we also think Commerce had inherent authority to reconsider its decision to revoke the order as to SSI. The evidence here showed that SSI violated its very agreement with Commerce and the very condition upon which Commerce's decision to revoke the order was predicated. Under those circumstances, it was certainly appropriate for Commerce to reconsider its decision under its inherent authority, where SSI had violated the very condition for that decision. So we think under either of those bases, either under the changed circumstances statute or under inherent authority, Commerce had the authority to reinstate SSI into the order, and its determination should be upheld. Any more questions? Thank you, Mr. Pierce. Mr. Pierce. Thank you. Judge Lind, to answer your question, a revocation in whole is an entire revocation of the order requiring a petition to be refiled for the imposition of anti-dumping duties. This happened in Oregon Steel, where standing was revisited in a changed circumstance review. It resulted in complete and whole revocation of the order. The order did not remain in effect. The injury test had to be redone with a new petition for the order to be imposed. TKS. I'm a little hesitant to talk about TKS since two of you wrote that opinion, but TKS is not applicable to this case. This is not a question of fraud. And indeed, in TKS, the determination, as you well know, was that a changed circumstance review is not a proper characterization of what was done. Those were the words of the court. Rather, it was a question of inherent authority because of the fraud that occurred in the earlier determination. In this case, there's no fraud. In fact, there's not even a redetermination in this case. This is a new determination, a new proceeding. In Trustee's rubber-thread case, the court explicitly said, Congress has not charged Commerce with conducting a changed circumstance review of a revoked anti-dumping order. And Commerce Department took that position because they didn't want to conduct a review of a revoked order. So fundamentally, I don't see where the authority is for Commerce to have conducted this changed circumstance review in the first place. Changed circumstance review authority of the Commerce Department has been broadly interpreted. But in every single case, it's always been a review of imports subject to the order, successor and interest, what rate applies. Is it subject to a non-market economy or market economy type of calculation? Has there been trans-shipment? But in every instance, for the changed circumstance review to be conducted, those imports were subject to the anti-dumping order. In our case, we're not subject to the anti-dumping order, yet they conducted a changed circumstance review. That's the bright line that gets drawn. That's what's different about this case and the other determinations, case law, unchanged circumstances review. In every instance, those imports were subject to an anti-dumping order. In our instance, we were not subject to an anti-dumping order, yet they conducted a changed circumstance review. And that, I contend, is not allowed under 1675B, as Council for U.S. Steel has argued. Finally, coming back to the issue of certification. Again, if you find that if there was no certification, could Commerce have done this? If you conclude no, then you have to say, well, what does the certification change? We say it changes nothing, because if Commerce can't do it under congressional authority in the first instance, getting an agreement from us, we can't confer authority under the Commerce Department. Either they have that authority from Congress, or they dump it. This has been seen before in Cheng Teh, a case where a company was excluded from an anti-dumping order,  Commerce tried to impose the dumping order, and the court said, that certification is invalid. This company had a right to be excluded from the order. You cannot take away that right under the statute by imposing a certification requirement. We're in the similar shoes. We cannot be put under an order based on certification after revocation, because the statute, the definition of revocation is very clear in the statute and in the regulations. Any questions for Mr. Pierce? Thank you, Mr. Pierce. The case is taken under submission. Thank you, Ms. McCarthy and Mr. Garish.